**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

**February 17, 2026**

**Christopher M. Wolpert**
**Clerk of Court**

JOHN ROGNE,

    Plaintiff - Appellant,

v.

CITY OF CATOOSA,

    Defendant - Appellee.

No. 25-5039
(D.C. No. 4:24-CV-00307-SH)
(N.D. Okla.)

_____

**ORDER AND JUDGMENT***
_____

Before **MATHESON**, **PHILLIPS**, and **ROSSMAN**, Circuit Judges.
_____

John Rogne appeals the dismissal of his § 1983 Fifth Amendment Takings

Clause claim against the City of Catoosa, Oklahoma ("the City").  Exercising

jurisdiction under 28 U.S.C. § 1291, we agree with the district court that Mr. Rogne's

claim was time-barred and affirm.

---

* This order and judgment is not binding precedent, except under the doctrines of
law of the case, res judicata, and collateral estoppel.  It may be cited, however, for its
persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

## I.  BACKGROUND[1]

### A.  *Cease-and-Desist Orders*

In 2009, the City issued a Cease-and-Desist Order that prevented Mr. Rogne

from "stockpil[ing] dirt on [his] vacant lots" without a permit (the "2009 CDO").

App. at 8.  Mr. Rogne administratively challenged the 2009 CDO.  After a hearing,

the City vacated it because Mr. Rogne "was not required to have a permit to stockpile

dirt on his property."  *Id.*

In 2011, the City issued another Cease-and-Desist Order "on the same vacant

[l]ots" (the "2011 CDO").  *Id.*  Mr. Rogne alleged that he "was not able to use his

property" because the City "erected a temporary fence around [his] property."  *Id.*

at 11.  He did not immediately bring an administrative challenge to the 2011 CDO.

### B.  *State Court and Administrative Proceedings*[2]

In 2014, Mr. Rogne sued the City for inverse condemnation in Oklahoma

district court, seeking injunctive relief and damages.  He requested (1) "an order

enjoining the City . . . from committing any acts that prohibits or precludes [sic]

---

[1] Because Mr. Rogne appeals from the district court's grant of the City's motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), we draw the facts from the well-pled allegations in Mr. Rogne's complaint.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Ashaheed v. Currington*, 7 F.4th 1236, 1249 (10th Cir. 2021).

[2] We take judicial notice of records in Mr. Rogne's related state court proceedings that were not included in his Appendix.  *See Rogne v. City of Catoosa*, No. CJ-2014-0420 (Okla. Dist. Ct. Rogers Cnty.).  We consider the court records to determine what occurred in a prior case—"i.e., as evidence of prior 'judicial acts'"—not for the truth of the matter. *Johnson v. Spencer*, 950 F.3d 680, 705 (10th Cir. 2020) (quoting 21B Wright & Miller's Federal Practice & Procedure § 5106.4).

[Mr. Rogne] from engaging in or transporting fill dirt to his property . . . and storing fill dirt on his property" and (2) damages "in excess of $10,000." *See* Amended Petition at 2, *Rogne v. City of Catoosa*, No. CJ-2014-0420 (Okla. Dist. Ct. Rogers Cnty. Oct. 29, 2014).

In 2016, the City moved for summary judgment, arguing that Mr. Rogne had "not been denied economical viable use of his land" and had "not exhausted his administrative remedies with respect to the 2011 [CDO.]" Def.'s Mot. for Summ. J. at 2, *Rogne*, No. CJ-2014-0420 (Okla. Dist. Ct. Rogers Cnty. Oct. 6, 2016). Instead of responding to the City's motion, Mr. Rogne requested a stay pending administrative proceedings, which the court granted. After a hearing before the City Council, the City vacated the 2011 CDO in February 2017.[3]

The state district court proceedings remained pending. In May 2020, the City moved to dismiss, arguing that Mr. Rogne's claim "is not justiciable and is now moot" because "the City rescinded the 2011 CDO in 2017." App. at 81. Following briefing and a hearing, the court granted the motion. Order at 1, *Rogne*, No. CJ-2014-0420 (Okla. Dist. Ct. Rogers Cnty. July 27, 2020). It concluded there was "no justiciable controversy going forward" because "there is no ongoing cease and desist order in effect." *Id.* As to Mr. Rogne's damages claim from the time the 2011 CDO went into effect "until it was rescinded in February of 2017," the court

---

[3] The parties entered into a settlement agreement in August 2017, but a dispute promptly arose. Mr. Rogne moved to enforce the settlement in the state district court, which enforced it in part, but the Oklahoma Civil Court of Appeals reversed.

concluded Mr. Rogne failed to exhaust his administrative remedies and therefore "cannot sustain an inverse condemnation claim upon these facts." *Id.*

Mr. Rogne moved for rehearing and to supplement the record. The court granted the motion. It converted the City's motion to dismiss to a summary judgment motion and also considered the City's still-pending 2016 summary judgment motion. Viewing the evidence in Mr. Rogne's favor, the court concluded that Mr. Rogne's "prospective claim" challenging the "ongoing cease and desist order" was "moot" because the 2011 CDO was dissolved through administrative proceedings. App. at 88. It then reiterated that Mr. Rogne failed to exhaust administrative remedies before 2017 and rejected that Mr. Rogne could excuse failure to exhaust based on his belief that a request for administrative relief would not succeed. The court granted the City summary judgment and entered "final judgment in favor of [the City] and against [Mr. Rogne]." *Id.* at 90.

Mr. Rogne appealed to the Oklahoma Court of Civil Appeals ("OCCA"). He argued that "he had a viable claim for damages for inverse condemnation from the time that the 2011 [CDO] had been issued by the City until 2017, when the City rescinded the Order." *Id.* at 30. The OCCA disagreed and affirmed the district court. It concluded "that there are no material disputed facts" and Mr. Rogne "cannot maintain an inverse condemnation claim under any set of facts because he failed to exhaust his administrative remedies prior to filing the instant action." *Id.* at 32. It also stated in a footnote "that, as a matter of law, there was no taking because

4

Mr. Rogne was granted relief as soon as he sought an administrative remedy and the City rescinded the Cease and Desist Order." *Id.* at 32 n.1.

The Oklahoma Supreme Court denied Mr. Rogne's petition for certiorari in February 2024.

### C. *Federal District Court Proceedings*

In June 2024, Mr. Rogne sued the City in federal court. He asserted "a temporary taking without just compensation by way of 42 U.S.C. § 1983, the 14th Amendment to the United States Constitution and under the Fifth Amendment to the United States Constitution" based on "the time period of the City's 2011 [CDO] until the City vacated the Order." *Id*. at 10-11.[4] He requested "monetary damages and attorneys' fees and costs in excess of $100,000." *Id*. at 11.

The City moved to dismiss under Federal Rule of Civil Procedure 12(b)(6), arguing (1) Mr. Rogne's § 1983 claim was untimely based on Oklahoma's two-year statute of limitations for personal-injury actions as applicable to § 1983 actions, and (2) issue preclusion prevented Mr. Rogne from relitigating whether a taking occurred.

---

[4] Mr. Rogne also sought a declaratory judgment that the City and Oklahoma state courts lacked subject matter jurisdiction to regulate Mr. Rogne because he "is a card holding Cherokee and his ownership of land was within the territorial jurisdiction of the Cherokee Nation." App. at 12. The City moved to dismiss the declaratory judgment count, arguing the district court lacked jurisdiction under the *Rooker-Feldman* doctrine. The district court determined it had jurisdiction because Mr. Rogne's request for a declaratory judgment did not ask it to "overturn or invalidate" a state court order, but the court dismissed the claim because it sought only retrospective relief. *Rogne v. City of Catoosa*, No. 24-cv-00307-SH, 2025 WL 582563, at *11 (N.D. Okla. Feb. 21, 2025). Mr. Rogne does not challenge this ruling on appeal, *see* Aplee. Br. at 5 n.2, so we do not address it further.

5

The district court granted the motion. *Rogne v. City of Catoosa*, No. 24-cv-00307-SH, 2025 WL 582563, at \*1 (N.D. Okla. Feb. 21, 2025). First, it determined that issue preclusion applied because Mr. Rogne "had a full and fair opportunity to litigate the issue of whether a taking occurred from 2011 to 2017" and that issue "was actually litigated and determined" by the OCCA. *Id.* at \*6. Second, even if issue preclusion did not bar the claim, his § 1983 claim "would still be barred by the statute of limitations." *Id.* at \*7. The court said Oklahoma's two-year statute of limitations for personal-injury claims applied and that his claim accrued in 2019 when the Supreme Court decided *Knick v. Township of Scott*, 588 U.S. 180 (2019), which held that litigants may bring takings clause claims in federal court without first seeking relief in state courts. *Rogne*, 2025 WL 582563, at \*7. Because Mr. Rogne failed to assert his § 1983 claim until 2024, the court concluded it was untimely. *Id.* It also rejected Mr. Rogne's argument that Oklahoma's savings statute, Okla. Stat. tit. 12, § 100, tolled the statute of limitations. *Id.* at \*8-10.

D. *Legal Background*

1. **Takings**

The Takings Clause of the Fifth Amendment states that "private property [shall not] be taken for public use, without just compensation." U.S. Const. amend. V.[5] "While States have substantial authority to regulate land use,

---

[5] The Takings Clause applies to the states through the Fourteenth Amendment. *See Dolan v. City of Tigard*, 512 U.S. 374, 383 (1994).

the right to compensation is triggered if they 'physically appropriat[e]' property or otherwise interfere with the owner's right to exclude others from it." *Sheetz v. Cnty. of El Dorado*, 601 U.S. 267, 274 (2024) (quoting *Cedar Point Nursery v. Hassid*, 594 U.S. 139, 149-52 (2021)).

Temporary takings "are not different in kind from permanent takings, for which the Constitution clearly requires compensation." *First English Evangelical Lutheran Church v. Los Angeles Cnty.*, 482 U.S. 304, 318 (1987).  The government's "post-taking actions," such as repeal of a challenged taking, "cannot nullify the property owner's existing Fifth Amendment right: '[W]here the government's activities have already worked a taking of all use of property, no subsequent action by the government can relieve it of the duty to provide compensation.'" *Knick*, 588 U.S. at 192 (quoting *First English*, 482 U.S. at 321).

2.  **The State-Litigation Requirement and *Knick***

Before *Knick*, the Supreme Court said that a property owner asserting a taking by a local government must exhaust available state procedures for compensation before seeking relief in federal court.  *Id.* at 191 (discussing *Williamson Cnty. Reg'l Planning Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172 (1984)).  In *Williamson County*, the Court held that "if a State provides an adequate procedure for seeking just compensation, the property owner cannot claim a violation of the [Takings] Clause until it has used the procedure and been denied just compensation." 473 U.S. at 195.  Thus, a federal takings claim against a local government was not

"ripe" until the property owner sought "compensation through the procedures the State has provided for doing so." *Id.* at 195.

As the Supreme Court explained in *Knick*, a "state court's resolution of a claim for just compensation under state law generally has preclusive effect in any subsequent federal suit." *Knick*, 588 U.S. at 184. As a result, the *Williamson County* "state-litigation requirement" created "a Catch-22" for the takings plaintiff: "He cannot go to federal court without going to state court first; but if he goes to state court and loses, his claim will be barred in federal court." *Id.* at 184-85.

In *Knick*, the Supreme Court eliminated the preclusion trap by overruling *Williamson County*'s state-litigation requirement. Under *Knick*, the "Fifth Amendment right to full compensation arises at the time of the taking, regardless of post-taking remedies that may be available to the property owner." 588 U.S. at 190. "If a local government takes private property without paying for it, that government has violated the Fifth Amendment—just as the Takings Clause says—without regard to subsequent state court proceedings." *Id.* at 189. The property owner "may bring his claim in federal court under § 1983 at that time." *Id.* at 185.[6]

---

[6] Although *Knick* held that property owners need not exhaust state procedures to bring a federal court takings claim, they still must satisfy a "finality requirement." *Pakdel v. City of San Francisco*, 594 U.S. 474, 478 (2021). Generally, the property owner must "at least resort to the procedure for obtaining variances and obtain a conclusive determination by the agency whether it would allow the proposed development, in order to ripen its takings claims." *North Mill Street, LLC v. City of Aspen*, 6 F.4th 1216, 1225 (10th Cir. 2021) (quoting *Suitum v. Tahoe Reg'l Plan. Agency*, 520 U.S. 725, 738 (1997)). "[A] plaintiff's failure to properly pursue

8

### 3. Oklahoma Inverse Condemnation

The Oklahoma Constitution provides: "Private property shall not be taken or damaged for public use without just compensation.  Just compensation shall mean the value of the property taken, and in addition, any injury to any part of the property not taken."  Okla. Const., Art. 2, § 24; *see Snow v. Town of Calumet*, 512 P.3d 369, 372 (Okla. 2022).  "When a governmental entity takes or damages private property without just compensation, a person may bring an inverse condemnation claim." *Snow*, 512 P.3d at 372.[7]  "The essential elements of an inverse condemnation claim are (1) a taking of property for public use by a governmental entity that has the power of eminent domain, and (2) a failure to tender just compensation." *Id.*  "A property owner is entitled to just compensation if the government's actions constitute such a 'substantial interference' with the use of the property that a de facto taking occurs." *Rocket Props., LLC v. City of Tulsa*, 567 P.3d 390, 395 (Okla. Civ. App. 2024) (quoting *Mattoon v. City of Norman*, 617 P.2d 1347, 1347 (Okla. 1980)).

---

administrative procedures may render a claim unripe *if* avenues still remain for the government to clarify or change its decision." *Id.* (quoting *Pakdel*, 594 U.S. at 480).

[7] Inverse condemnation is the traditional state law "cause of action against a governmental defendant to recover the value of property which has been taken in fact by the governmental defendant." *Knick*, 588 U.S. at 186 (quoting *United States v. Clarke*, 445 U.S. 253, 257 (1980)); *id.* at 205 (equating "federal court takings claims" to "inverse condemnation suits in state court").  "Inverse condemnation stands in contrast to direct condemnation, in which the government initiates proceedings to acquire title under its eminent domain authority." *Id.*

In general, Oklahoma requires that property owners exhaust administrative remedies before resorting to the courts for inverse condemnation. *Id.* at 394. "[U]ntil a final administrative decision has been formalized," an inverse condemnation action is not ripe for judicial review in Oklahoma. *See April v. City of Broken Arrow*, 775 P.2d 1347, 1355 (Okla. 1989). "The requirement to exhaust administrative remedies may be excused where there is a showing the administrative remedies would be futile or inadequate to give the relief required; however, a strong showing is required." *Rocket Props.*, 567 P.3d at 396.

## II. DISCUSSION

On appeal, Mr. Rogne does not contest that he failed to file his § 1983 takings action before the applicable statute of limitations expired.[8] He argues that he timely filed his action under the Oklahoma savings statute. We disagree. As we discuss below, the statute of limitations period for his claim was two years, his claim accrued long before he filed this action in 2024, and the savings statute does not apply

---

[8] In his reply brief, Mr. Rogne argues for the first time that his "Fifth Amendment claim for just compensation does not arise under § 1983" and that § 1983 is not required to assert a Fifth Amendment claim. Aplt. Reply Br. at 1-2. The City moved to file a sur-reply to respond to Mr. Rogne's new argument. Aplee. Mot. to file Sur-Reply at 2-3, Doc. No. 11150917.

Mr. Rogne has waived this argument on three separate grounds. First, he failed to raise it in his opening brief. *See Sawyers v. Norton*, 962 F.3d 1270, 1286 (10th Cir. 2020). Second, he also failed to raise it in district court and does not argue plain error on appeal. *See Paycom Payroll, LLC v. Richison*, 758 F.3d 1198, 1203 (10th Cir. 2014). Third, the argument is inadequately briefed in his Reply brief. *See Sawyers*, 962 F.3d at 1286. Also, the district court did not pass upon this issue. *See Tesone v. Empire Mktg. Strategies*, 942 F.3d 979, 991-92 (10th Cir. 2019). We decline to consider it. We deny as moot the City's motion to file a sur-reply on this argument.

because the Oklahoma state courts resolved his inverse condemnation claim for damages on the merits.[9]

### A. *Standard of Review*

We review de novo a district court's decision to grant a Rule 12(b)(6) motion to dismiss for failure to state a claim. *Cuervo v. Sorenson*, 112 F.4th 1307, 1312 (10th Cir. 2024). "To survive a motion to dismiss [for failure to state a claim], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "On a motion to dismiss, 'all well-pleaded allegations of the complaint are accepted as true and viewed in a light most favorable to the nonmoving party.'" *Johnson v. City of Cheyenne*, 99 F.4th 1206, 1217 (10th Cir. 2024) (quoting *Schwartz v. Booker*, 702 F.3d 573, 579 (10th Cir. 2012)).

"We review whether a district court properly applied a statute of limitations de novo." *Allen v. Env't Restoration, LLC*, 32 F.4th 1239, 1243 (10th Cir. 2022).

---

[9] Because we conclude Mr. Rogne's claim is time-barred, we do not address issue preclusion, the district court's alternative basis for dismissal. But we note that "a state court's resolution of a claim for just compensation under state law generally has preclusive effect in any subsequent federal suit." *Knick*, 588 U.S. at 184; *see also San Remo Hotel, L.P. v. City & Cnty. of San Francisco*, 545 U.S. 323, 338 (2005) ("Federal courts, moreover, are not free to disregard [the full faith and credit statute] simply to guarantee that all takings plaintiffs can have their day in federal court.").

B. *Timeliness*

Whether Mr. Rogne timely asserted his § 1983 claim depends on (1) the statute of limitations applicable to his claim, (2) when his claim accrued, and (3) whether the limitations period was tolled.

1. **Statute of Limitations**

"The statute of limitations period for a § 1983 claim is dictated by the personal injury statute of limitations in the state in which the claim arose." *Schell v. Chief Just. and Justs. of Okla. Sup. Ct.*, 11 F.4th 1178, 1191 (10th Cir. 2021) (quotations omitted); *see also Nance v. Ward*, 597 U.S. 159, 174 (2022) ("[A]ll § 1983 suits must be brought within a State's statute of limitations for personal-injury actions."). Oklahoma's two-year statute of limitations for personal injury claims applies to Mr. Rogne's § 1983 claim. *See Schell*, 11 F4th at 1191.[10] Mr. Rogne does not argue otherwise. *See* Aplt. Br. at 23.

2. **Accrual**

Federal law determines the accrual of section 1983 claims. *Herrera v. City of Espanola*, 32 F.4th 980, 990 (10th Cir. 2022). "[I]t is the standard rule that

---

[10] *See also 2701 Mountain Glen CT, LLC v. City of Woodland Park,* 856 F. App'x 141, 143-44 (10th Cir. 2021) (unpublished) (holding "Colorado's two-year statute of limitations for personal injury claims" applies to plaintiff's § 1983 takings claim); *Bruce v. Ogden City Corp.*, No. 22-4114, 2023 WL 8300363, at *10 (10th Cir. Dec. 1, 2023) (unpublished) (holding "Utah's four-year residual statute of limitations governs Bruce's § 1983 claims" asserting takings clause violations).

accrual occurs when the plaintiff has a complete and present cause of action, that is, when the plaintiff can file suit and obtain relief." *Id.* (quotations omitted).

Previously, under *Williamson County*, "until the property owner ha[d] tried and failed to obtain compensation through the available state procedure," a property owner had not suffered a constitutional takings injury and "thus [had] no Fifth Amendment claim actionable under § 1983." *Knick*, 588 U.S. at 194-95. *Knick*'s overruling of *Williamson County* and its holding that "a property owner has a claim for a violation of the Takings Clause as soon as a government takes his property for public use without paying for it," 588 U.S. at 189, changed the accrual analysis. Under *Knick*, a property owner's Fifth Amendment claim under § 1983 accrues "at the time of the taking." *Id.*

Mr. Rogne argues that his federal takings claim accrued in 2011 when the City issued the cease-and-desist order and placed a fence on his property. Aplt. Br. at 30. The district court concluded, and the City urges on appeal, that Mr. Rogne's federal takings claim accrued when the Supreme Court decided *Knick* in 2019. Aplee. Br. at 10; *Rogne*, 2025 WL 582563, at *8. Mr. Rogne filed his federal takings claim under § 1983 in 2024. Therefore, under either accrual date, the two-year statute of limitations had lapsed.

13

3. **Oklahoma Savings Statute**

Mr. Rogne argues that Oklahoma's savings statute, Okla. Stat. tit. 12, § 100,

should have allowed his claim by his bringing a new action within one year of when

his state lawsuit ended. We disagree.[11]

   a. *Savings statute*

Oklahoma's savings statute, Okla. Stat. tit. 12, § 100, "permits the filing of an

action after the statute of limitations has run." *Grider v. USX Corp.*, 847 P.2d 779,

783 (Okla. 1993). It provides,

> If any action is commenced within due time, and ... the
> plaintiff fail[s] in such action otherwise than upon the merits,
> the plaintiff ... may commence a new action within one (1)
> year after the reversal or failure although the time limit for
> commencing the action shall have expired before the new
> action is filed.

Okla. Stat. tit. 12, § 100.

Under the statute, if a plaintiff timely initiates an action that "fails . . .

otherwise than on the merits," the plaintiff has "an additional year from the time the

appeal or motion was adjudicated in which to refile a complaint." *Twashakarris, Inc.*

*v. I.N.S. of U.S.*, 890 F.2d 236, 237 (10th Cir. 1989). In general, "the Oklahoma

savings statute applies to § 1983 claims." *Eastom v. City of Tulsa*, 783 F.3d 1181,

---

[11] Mr. Rogne argued below that his reliance on *Williamson County* and the
intervening change in law in *Knick* equitably tolled his claim. The district court rejected
this argument. *Rogne*, 2025 WL 582563, at *8. Mr. Rogne does argue equitable tolling
on appeal. We therefore do not address the issue. *Tran v. Trs. of State Colls. in Colo.*,
355 F.3d 1263, 1266 (10th Cir. 2004) (holding that issues not raised in appellant's
opening brief "are deemed abandoned or waived" (quotations omitted)).

1184 (10th Cir. 2015). And the "new action" need not be identical to the failed prior action. *Ciszkowski v. Rector*, 70 F.3d 1282 (Table), 1995 WL 681504, at *2 (10th Cir. 1995) (unpublished). "The Oklahoma Supreme Court . . . has construed section 100 in light of that state's transactional approach to the definition of a cause of action." *Id.* (citing *Chandler v. Denton*, 741 P.2d 855, 862-64 (Okla. 1987)). So long as the plaintiff "allege[d] the operative events in his first timely suit, his failure to assert his section 1983 theory of recovery within two years would not bar him from pursuing that theory" in a new action filed under Oklahoma's savings statute. *Id.*

The plaintiff bears the burden of establishing "the original action fail[ed] otherwise than upon the merits." *Id.* "The word 'merits' and the phrase 'on the merits' have been understood . . . as referring to the substance of a claim or defense, different from purely procedural or technical grounds." *Pettyjohn v. Plaster*, 956 P.2d 948, 950 (Okla. Civ. App. 1998) (citing *Duncan v. Deming Inv. Co.*, 154 P. 651 (1916)). "A judgment is rendered on the merits 'when it amounts to a declaration of the law as to the respective rights and duties of the parties, based on the ultimate facts or state of facts disclosed by the pleadings, and evidence upon which the right of recovery depends, irrespective of formal, technical, or dilatory objections or contentions.'" *Id.* (quoting *Crow v. Abraham*, 167 P. 590, 591 (Okla. 1917)) (holding that dismissal for failure to state a claim upon which relief could be granted is a dismissal on the merits and the savings statute does not apply to the subsequent action).

15

b. *Analysis*

i. OCCA decision on the merits

To salvage his § 1983 claim based on the Oklahoma's savings statute, Mr. Rogne must establish that (1) he timely filed his state inverse condemnation claim; (2) his state inverse condemnation claim alleged the same operative events as his federal § 1983 claim; (3) he filed his § 1983 claim within one year of the resolution of his state inverse condemnation appeal; and (4) his state inverse condemnation claim failed "otherwise than upon the merits." Okla. Stat. tit. 12, § 100; *Twashakarris*, 890 F.2d at 237.

The parties dispute only the fourth element—whether Mr. Rogne's state inverse condemnation claim failed "otherwise than upon the merits." We conclude it did not because the OCCA resolved Mr. Rogne's claim upon the merits when it affirmed summary judgment for the City.[12]

We read the OCCA's decision as declaring "the respective rights and duties of the parties, based on the ultimate facts." *Pettyjohn*, 956 P.2d at 950. It determined "there are no material disputed facts" and summary judgment was appropriate. App. at 32. In Oklahoma, "[s]ummary judgment is an adjudication on the merits of the controversy." *Ind. Sch. Dist. #52 of Okla. Cnty. v. Hofmeister*, 473 P.3d 475, 489

---

[12] Mr. Rogne's focus on the Oklahoma district court's decision is misplaced. *See, e.g.*, Aplt. Br. at 8. The failed action under Oklahoma's savings statute "includes the initial judgment and any validly filed appeals." *Twashakarris,* 890 F.2d at 237. We must therefore consider whether the ultimate disposition of Mr. Rogne's case, after his "validly filed appeals," was "upon the merits." *Id.*

(Okla. 2020); *Okla. Pub. Emps. Ass'n v. Okla. Dep't of Central Servs.*, 55 P.3d 1072, 1076 (Okla. 2002). The OCCA affirmed summary judgment for the City.

Further, the OCCA said that "[Mr.] Rogne cannot maintain an inverse condemnation claim under any set of facts because he failed to exhaust his administrative remedies prior to filing the instant action" and, "as soon as he sought an administrative remedy . . . the City rescinded the Cease and Desist Order." App. at 32 & n.1. Because Mr. Rogne "was granted relief" through administrative proceedings, the OCCA concluded "that, as a matter of law, there was no taking." *Id.* at 32 n.1. By concluding that "there was no taking" and that Mr. Rogne's inverse condemnation claim failed "under any set of facts," the OCCA resolved Mr. Rogne's claim on the merits.

### ii. Mr. Rogne's arguments

Mr. Rogne's arguments that the Oklahoma courts did not render a merits decision lack merit.

First, he presents various legal arguments based on Oklahoma law—that (1) summary judgment is not available for inverse condemnation claims and such claims "can only be resolved by the jury," Aplt. Br. at 19; (2) the Oklahoma courts failed to address the merits "issues of (i) substantial interference and (ii) just compensation," *id.*; and (3) the City's "[s]ubsequent rescission" of the 2011 CDO does not "relieve [the City] of the duty to provide compensation," *id.* at 8.

In raising these arguments, Mr. Rogne effectively asks us to review the OCCA's decision for legal error under state law. But even if he has one or more

17

colorable arguments, we lack authority to address them. "It is axiomatic that state courts are the final arbiters of state law." *Brown v. Buhman*, 822 F.3d 1151, 1160 n.6 (10th Cir. 2016) (quoting *Schrock v. Wyeth, Inc.*, 727 F.3d 1273, 1280 (10th Cir. 2013)); *see also Johnson v. Fankell*, 520 U.S. 911, 916 (1997) ("Neither this Court nor any other federal tribunal has any authority to place a construction on a state statute different from the one rendered by the highest court of the State," whether state rule is "procedural" or "substantive"); *TMJ Implants, Inc. v. Aetna, Inc.*, 498 F.3d 1175, 1181 (10th Cir. 2007) ("A federal court must follow the state's highest court in pronouncing or construing the state's common law, statutory law, or constitutional law . . . if state law imposes [a] limitation, we must recognize that limitation even if the federal constitution is not so restrictive"). The appropriate court for these arguments was the Oklahoma Supreme Court, which denied Mr. Rogne's petition for certiorari. Our inquiry is limited to whether the OCCA resolved Mr. Rogne's inverse condemnation claim upon the merits. We conclude it did.

Second, Mr. Rogne's argument that the Oklahoma courts resolved his claim on mootness grounds overlooks the state court procedural history and the relief he requested—both prospective injunctive relief and damages. *See* Amended Petition at 2-3, *Rogne*, No. CJ-2014-0420 (Okla. Dist. Ct. Rogers Cnty. Oct. 29, 2014). The Oklahoma district court held Mr. Rogne's "prospective claim," which sought to vacate the "ongoing cease and desist order," was "moot, and the issue is no longer justiciable," because the City vacated the 2011 CDO in 2017. App. at 88. Mr. Rogne

18

did not appeal this portion of the district court's ruling, so the OCCA did not address it. Other than summarizing the City's motion to dismiss and the district court's ruling, the OCCA did not address mootness.

As for Mr. Rogne's damages claim for a temporary taking between 2011 and 2017, neither the Oklahoma district court nor the OCCA determined that claim was moot. In the Oklahoma district court's order granting the City's motion to dismiss, it concluded Mr. Rogne "cannot sustain an inverse condemnation claim" for "the time period from the 2011 cease and desist order until it was rescinded in February of 2017" because he "had not exhausted his administrative remedies at that point." Order at 1, *Rogne*, No. CJ-2014-0420 (Okla. Dist. Ct. Rogers Cnty. July 27, 2020). On rehearing, the district court granted summary judgment to the City and rejected Mr. Rogne's argument that "exhaustion of Plaintiff's remedies would not have been successful in 2011 [so] there is no requirement that this Plaintiff exhausts such remedies." App. at 89.

The OCCA's decision solely addressed Mr. Rogne's "claim for damages for inverse condemnation from the time that the 2011 Cease and Desist Order had been issued by the City until 2017, when the City rescinded the Order." *Id.* at 30. It did not review the district court's conclusion that his prospective claim was moot. Nor did it conclude his damages claim was moot. Rather, as discussed, it held no taking occurred, affirming summary judgment on the merits for the City.

\* \* \* \*

19

In sum, Oklahoma's two-year statute of limitations applies to Mr. Rogne's § 1983 Fifth Amendment claim.  Mr. Rogne failed to file his claim within two years. The Oklahoma savings statute does not apply because the OCCA resolved Mr. Rogne's inverse condemnation claim on the merits.  Because Mr. Rogne first asserted his Fifth Amendment claim under § 1983 in 2024, years after the limitations period ended, it was time-barred.

### III.  CONCLUSION

We affirm the district court's judgment.

Entered for the Court


Scott M. Matheson, Jr.
Circuit Judge